## N. C. WRIGHT v. A. C. WRIGHT.

Chancery Court — Divorce — Admissions of Party — Code of 1880, sec. 1161.

The admissions of a party defendant to a suit for divorce as to the cause of separation, made shortly after the separation, and at a time when there was no ground to suspect collusion, are admissible in evidence.

The admissions directed to be explained by section 1611 of the Code of 1880 are those made in the pleadings or after suit brought.[1]

Same — Ground for Divorce — Desertion — Proof to Sustain.

A husband who files a bill for divorce against his wife, alleging desertion and stating in his bill that he was forced to leave the home of his wife, where they were residing, on account of the bad treatment he received from her children of a former marriage and that he had proposed to her to abandon her home and children and live elsewhere with him, promising her support and protection, and that she refused to go, is not entitled to a divorce in the absence of proof as to his ability to furnish her a home and his good faith in making the offer.[2]

Bill for divorce, by appellant, N. C. Wright, against his wife, Mrs. A. C. Wright. From a decree, dismissing his bill, complainant appeals.

The bill alleges that the defendant was a widow at the time of their marriage and had three children, of the former marriage,

---

[1]
"The proceedings to obtain a divorce shall be by bill in chancery, which shall be conducted as other suits in chancery, except that the defendant shall not be required to answer on oath, and the bill is not to be taken for confessed, nor shall admissions made in the answer or otherwise be taken as evidence; and in all cases the bill must be accompanied by an affidavit of complainant, that it is not filed by collusion with the defendant, for the purpose of obtaining a divorce, but that the causes for a divorce stated in the bill are true as stated." Code of 1880, § 1161; Code of 1892, § 1568; Code of 1906, § 1676.

A wife deserted her husband without cause. In about a year she returned to his house and remained there about a year and a half. During that time the parties occupied separate portions of the house, she refusing to cohabit with her husband. The refusal to cohabit continued for more than two years. *Held*, that the husband was entitled to a divorce on the ground of desertion. Graves v. Graves, 41 So. 384.

In a suit by a husband for divorce, evidence of statements of the wife as to her relations with her husband is admissible. Graves v. Graves, 41 So. 384.

living with her, and they continued to live with them at her home after the marriage, and that they were very rude and disrespectful to complainant so that he could not live with them in any peace, and that neither he nor defendant could control or manage them; that he proposed to complainant and urged her to abandon their home and go with him elsewhere, pledging her support and protection and his affections, and she refused to do so, and in self-defense he had separated from her and they had not lived or cohabited together for more than two years.

On the trial one Harris testified that he knew both the defendant and complainant well; that defendant had three children living with her and that complainant claimed that they caused the separation; that they had separated at the time stated in the bill and had not lived together since; that he had heard both the defendant and complainant say that complainant had proposed to defendant to quit their home and leave the children and go with him elsewhere, promising her protection and support and that she refused to go.

H. C. Kirby, a son of the defendant, testified that the defendant, soon after the separation, stated to him that complainant had asked her to go and live with him elsewhere.

The statements of these witnesses, as to the admissions of the defendant, were excluded by the court.

2

A voluntary separation of husband and wife by mutual consent, and agreement by both parties, is no ground for granting a divorce to either. A divorce will not be granted on the statutory ground of "willful, continued and obstinate desertion of the defendant for three years," unless it appears that such desertion was without the consent of the complainant. Fulton *v.* Fulton, 36 Miss. 517.

The mere absence of the husband or wife from the matrimonial domicile, without an intention to discontinue the matrimonial relation, is not, in a legal sense, a desertion, but such absence becomes desertion as soon as the absentee abandons the intention of returning. Fulton *v.* Fulton, 36 Miss. 517.

To authorize a divorce for the cause of desertion for three years, the desertion must be continuous for three consecutive years. If there has been a return, the broken intervals of absence caused by it cannot be added together, but the desertion must be for three years at one time; it seems' this must elapse since the last cohabitation. Gaillard *v.* Gaillard, 5 Cush. 152.

And hence, also, if there be a valid offer by the absentee to return within the three years, before the filing of the bill, a divorce will not be granted. But the offer to return must be *bona fide,* and unaccompanied by any improper

APPEALED from Chancery Court, Clay county, F. A. CRITZ, Chancellor.

Reversed and remanded, January 22, 1883.

*Attorneys for appellant, McIntosh & Williams.*

Attorneys for appellee are not named in the record.

Brief of McIntosh & Williams:

In the case of Fulton v. Fulton, 36 Miss. 517, the court declared that the husband's right to prescribe who shall be received as guests or visitors at the matrimonial mansion is not to be controverted.

In this case, while at Cooper's Well, an attempt was made to assassinate the complainant by some party unknown to him, whom he *believed* to be his wife's son by her former marriage. *For that reason* he refused to permit the son to visit his house afterwards. This was the real cause of their separation. Mrs. Fulton was removed from the Wells in a low state of health, to the house of her physician, for medical treatment. After she had sufficiently recovered her health to return home, she expressed a desire to do so, but the husband refused to permit her to return, *only* upon the condition that the son should not be permitted to visit her, to

qualifications or conditions, and really intended to be carried out, if accepted. Fulton v. Fulton, 36 Miss. 517.

The husband has a perfect legal right to determine who shall be received at the matrimonial domicile as guests and visitors, and who shall be excluded therefrom; and hence, if in the exercise of that right, he prohibits the wife from receiving at that place the visits of her child by a former husband, this constitutes no excuse for an abandonment of the matrimonial domicile by her, and if she afterwards offers to return, upon condition that such visits be allowed by the husband, such offer does not put an end to her desertion. Fulton v. Fulton, 36 Miss. 517.

The domicile of the husband is that of the wife. She cannot, to suit her convenience or pleasure, adopt a different home by refusing to reside in the domicile of his choice. Suter v. Suter, 72 Miss. 345; 16 So. 673.

Hence, a wife who, after temporary residence with the family in this State, remains here, and refuses to return to her husband in another State (where he has a domicile and place of business), unless he will buy a residence in their joint names, is not deserted, and she acquires no domicile in this State entitling her to maintain a suit for divorce and alimony. Suter v. Suter, 72 Miss. 345; 16 So. 673.

which condition she could not assent, and when they had been *thus* separated for three years, the husband filed his bill for a divorce, charging desertion. In this case all the proofs relied upon by the complainant were statements *by the parties to the witnesses* about their troubles.

Bishop on Marriage and Divorce, section 788, lays down the doctrine that when a disagreement arises between a husband and wife as to where the place of abode shall be, that the husband alone has the right to settle it, and the learned author says that only three cases can be found controverting this doctrine, one from Vermont, one from Pennsylvania, and one from Wisconsin. And in section 790 says, "The general doctrine is plain, and the cases before referred to do not conflict with it; that if a husband lawfully and properly undertakes to change the matrimonial residence, and the wife refuses, having no legal excuse, to proceed with him to the new locality, she thereby deserts him," and cites Walker *v.* Leighton, 11 Fost. N. H. 111.

The doctrine, we take it, is, therefore, settled that the husband has the unquestioned right to say who shall be members of the household, and to exclude therefrom the children of the wife by a former marriage, as well as to say *where* the place of their abode shall be.

The complainant in this bill had the right to say to the defendant that, "Inasmuch as your children are coarse, discourteous, undisciplined, and insulting to me, and refuse to be advised or governed by either of us, and make this, our home, to me unbearable, I demand that you quit and go with me elsewhere, assuring you of every protection and affection that a husband can a wife." And when she refused she thereby said to him: "I prefer the association of my children to yours; whilst it is true you cannot longer live with me happily or with any self-respect, and for your own self-protection must leave, yet my maternal affections are stronger for my children than my conjugal affections are for you. I will not, therefore, leave my children and go with you." *This was, then, desertion.*

The chief object of every good man's life is, among other things, the realization of as much happiness as possible, and the marriage relation was ordained by God and sanctioned by the laws of the land mainly for the promotion and security of that

end. When, therefore, they failed to be conducive to that end, the same reason for their ordination should work their revocation.

The chancellor denied the complainant relief on the ground that the *statements* of the defendant, as proven by the witnesses, were such *admissions* as are inadmissible as evidence under our Code, section 1161, which provides "that admissions made in the answer or otherwise shall not be taken as evidence." We insist that the *admissions* alluded to in the statute are such as can be made by the pleadings, as by answer or demurrer, or in any other way showing collusion between the parties for the sole purpose of preventing divorce decrees being obtained by collusion between the parties. The idea is evident from reading section 1161 of the Code.

The answer of the witness, Harris, to the eighth and ninth interrogatories, and the testimony of the witness, Kirby, establish the fact beyond a doubt that the *real* cause of the separation of the parties was on account of the defendant's children, and the complainant urged the defendant to leave them and quit that home and go with him, which she refused to do. All that testimony was ruled out by the chancellor as inadmissible, upon the theory that they were such admissions of the defendant as are prohibited by the statute, which ruling, we respectfully submit, was erroneous.

In order to justify a divorce, the defendant must not only be shown to be in default, but it must appear *affirmatively,* by affidavit of the complainant, that there is no collusion between the parties; hence, the law provides that admissions of the defendant, by answer or otherwise, shall not be received as evidence. Otherwise, under the rules of practice in the Chancery Court, the defendant, in aid of the suit, as friendly suits are often conducted, might admit every allegation in the bill, either by answer or demurrer, and thereby enable the complainant to obtain his decree without any proof to sustain it. But surely it was not contemplated by the statute that the general laws governing pleading and practice in the Chancery Court should be further violated than to the extent prescribed.

In other words, we take it that this statute must be strictly construed, hence statements made by the defendant about the

time and soon after the separation of the parties cannot be construed as such admissions as are inhibited by the statute, but should be regarded in the nature of verbal acts and as part of the *res gestae*. Such was the construction placed by our high court upon the *statements,* or, as the chancellor below terms, *admissions* of Mr. and Mrs. Fulton, and, to sustain that position, refers to 1 Greenleaf, 108, section 123.

If this court should decide that no statement made by the parties to a divorce suit should be received as evidence, such a decision would not only overrule Fulton *v.* Fulton, but would virtually have the effect to repeal the statute for divorces. For, according to the nature of things, domestic troubles and disagreements are necessarily hidden from the public; they are shut out from the world, and if they can be established *only by eyewitnesses,* then it could seldom, if ever, be done, and the beneficent provision for the legal separation of parties who, for cause, cannot live together as husband and wife, would thereby be abrogated.

We ask for a decree here reversing the decree of the chancellor and dissolving the bonds of matrimony between the parties.

Brief for the appellee is not found in the record.

OPINION.—CHALMERS, J.:

The chancellor improperly excluded proof of the statements made by the wife as to the cause of the separation between herself and husband, shortly after the separation took place, at a time when there was no ground to suspect collusion. The admissions of the parties, which the statute directs to be excluded, relate to admissions in the pleadings, or to those made after suit is brought, or under circumstances which suggest collusion.

But, looking at the testimony excluded, there is a barrenness and meagerness of proof which indispose us to grant the divorce prayed. There are isolated statements by two witnesses that they heard the wife say that the husband proposed that she should abandon her home and her children and live elsewhere with him. How she came to make these statements, what led up to them, and what else she said, and who was present, is not shown. Surely, if the very full allegations of the bill are true, something more than this about the unfortunate misunderstanding and separation can be shown.

There is no proof whatever as to the true cause of unhappiness of the parties, and as to what it was that drove the husband away, except the statement as to the difficulty between himself and his wife's sons about the ownership of a wagon, which is not alluded to in the bill. Some proof should be made also to the husband's condition and ability to furnish his wife a home elsewhere and his good faith in making the offer. We are not prepared to say that a woman with a comfortable home of her own is bound to abandon it at the command of a vagrant and wholly impecunious husband and follow him into a wandering and homeless existence. We decline, at least, to decide this question until we have the exact facts of the case before us. Complainant may have a good case, but he has not sufficiently proved it. We will give him an opportunity to do so.

*We reverse the decree* dismissing the bill, and remand the case, with leave to take additional proof. Costs of the appeal to be divided.